IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| STEVEN HOWELL, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    No. 10-2924-STA-tmp |
| | ) |
| FIRST TENNESSEE BANK NATIONAL | ) |
| ASSOCIATION, | ) |
| | ) |
|       Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant First Tennessee Bank National Association's ("FTB") Motion for Summary Judgment (D.E. # 42) filed March 18, 2013. Plaintiff Steven Howell ("Howell") filed a Response (D.E. # 47) on May 9, 2013. FTB filed a Reply (D.E. # 53) on May 28, 2013. For the reasons stated herein, the Court **DENIES** Defendant's Motion for Summary Judgment.

**BACKGROUND**

For the purposes of ruling on the instant motion for summary judgment, the Court takes the following facts as undisputed.

At all relevant times, FTB's recruiting process involved potential employees filling out an online application, creating a profile for each applicant. (Dear Dep. 28:22-29:4, 30:5-7). The online application contained a field for the applicant to indicate which year he graduated from college. (Pl.'s Resp. to Def.'s Stat. Facts. ¶ 3). A Talent Acquisition Consultant at FTB reviewed all applications for a particular position. (Dear Dep. 29:19-24). This review consists

1

of "looking for the skill set" appropriate for the position.  (*Id.* 19:18-19).  Once the Talent Acquisition Consultant identified applicants with the relevant skill set, he would send the résumés of qualified applicants to the hiring leader for the position.  (*Id.* 31:3-8).  Once the hiring leader received these résumés, he selected which candidates he wished to interview.  (*Id.* 31:8-12).  The Talent Acquisition Consultant would then conduct a pre-screening interview with the candidates selected to ensure they meet minimum specifications for the position.  (*Id.* 31:13-22).  If the Talent Acquisition Consultant determined the candidate met the criteria for the position, the Talent Acquisition consultant would schedule an interview for the applicant with the hiring manager.  (*Id.* 31:23-25).  Therefore, if the Talent Acquisition Consultant did not initially forward the applicant's résumé to the hiring manager, there was no chance that FTB would hire the applicant, as they will not receive an interview with the hiring leader.  (*Id.* 69:22-70:12).  Although Talent Acquisition Consultant Sondrea Dear ("Dear") testified that Talent Acquisition Consultants did not look at the date of graduation, Deal also testified that information was available to Talent Acquisition Consultants.  (*Id*. 93:12-16).

Between October 21, 2009 and September 21, 2010, Howell submitted thirty-nine applications for employment with FTB.  (Pl.'s Dep. 145:18-25, 159: 17-19; Dear Dep. 6:14-15, 64: 17-24).  Howell applied at various times for positions as a Financial Services Representative ("FSR"); a position as a Teller; a position as a Property & Casualty Producer; and a position as a Paraplanner.  (Bacon Decl. ¶ 4).  Howell testified he applied for the FSR position to "get his foot in the door" so he could look for other jobs at FTB.  (Pl.'s Dep. 68:6-12).  Howell also listed "looking for potential" (meaning either advancement or more money) as his salary expectation on his applications.  (*Id.* 89:22-25).  FTB typically receives dozens of applications for any open

FSR position. (Bacon Decl. ¶ 5). FTB received an average of over forty applications for each position for which Howell applied. (*Id.*)

In March 2010, Dear determined Howell might be a suitable candidate for a position as an FSR "floater." (Dear Dep. 71:14-22). FTB does not assign a floater FSR to one particular branch; rather, a floater FSR works at various branches on an as-needed basis. (*Id.* 68:19-23; Pl.'s Dep. 89:11-17; Dent Dep. 17:10-19; Merryman Dep. 18:10-15, 19:1-8, 31:23-32:4). Dear forwarded Howell's résumé to Regional Sales Manager Vickie Merryman ("Merryman") for review. Merryman reviewed Howell's résumé and asked Dear to schedule an interview. (*Id.* 31:8-13.) Dear set up an interview between Howell and Merryman. (Pl.'s Dep. 90:7-11, 92:8-9, 96:2-16, 114:22-115:1).

In the interview, Howell and Merryman discussed Howell's experience in building relationships with customers from a prior job. (Merryman Decl. ¶ 4). As a result of this conversation, Merryman decided Howell would be better suited to an FSR position that remained at one location rather than floating from branch to branch. (Merryman Dep. 31:24-32:10). Merryman shared this observation with Howell, who agreed he would perform better at one location. (Pl.'s Dep. 97:1-11, 105:10-22).

After the interview, Small Business Relationship Manager Michael Hutchison ("Hutchison") informed Merryman of a conversation between Howell and Hutchison. (Merryman Decl. ¶ 6).[1] In this conversation, Howell had told Hutchison that Small Business

---

[1] The Court notes Howell's objection to this fact as undisputed. Howell argues this fact is supported solely by inadmissible hearsay, and the Court should thus exclude it as not properly supported under Fed. R. Civ. P. 56(c)(2) and Fed. R. Evid. 801. However, it does not appear to the Court that FTB introduces this evidence to prove Hutchison had such a conversation with Howell, nor does it appear to the Court that FTB introduces this evidence to prove the contents of that conversation. Rather, FTB introduces this evidence to show that Merryman had a conversation in which Hutchison relayed the contents of a conversation with Howell. In other

Relationship Manager was the type of position Howell ultimately desired.  (Merryman Decl. ¶ 6).  Merryman determined that if she hired Howell into the FSR position, Howell would quickly attempt to move into a Small Business Relationship Manager position.[2]  (*Id.* ¶ 8).  For an FSR to be fully-trained takes approximately six months.  (*Id.* ¶ 9).  This training involves a substantial investment by FTB.  (*Id.* ¶ 10).  Further, an FSR must build and maintain relationships with FTB's customers, and FTB believes its customers enjoy seeing familiar faces.  (*Id.* ¶ 11).  Accordingly, FTB seeks to hire applicants for the FSR position FTB believes will stay in the position for an extended period.  (*Id.* ¶ 12).  The position of Small Business Relationship Manager requires more financial expertise than that of FSR, as a Small Business Relationship Manager must pursue and communicate with businesses in an effort to develop a business lending portfolio.  (*Id.* ¶ 7.)

In addition to the floater position, Howell applied for twenty-five FSR positions that FTB filled with external applicants who were not previous FTB employees.  (FTB Production at 1,

---

words, the "truth" to be proven by the evidence is the fact of Merryman's conversation with Hutchison, not that Hutchison had a conversation with Howell or that Howell said anything in particular in that conversation.  Although FTB argues this conversation does not fall under the present sense exception, this is not a present sense impression exception under Fed. R. Evid. 803(1).  Rather, it is not hearsay by definition under Fed. R. Evid. 802.  Therefore, the Court **OVERRULES** Howell's objection.

[2] Howell again objects to this fact as unsupported except by inadmissible hearsay.  For the reasons stated *supra* fn. 1, the Court **OVERRULES** this objection.  Howell also objects that Merryman's inferences regarding Howell's likelihood of remaining in the FSR position and Merryman's statements in her deposition that she recommended Ronna Martin ("Martin") for the floater position because Martin was an already-trained internal candidate raise an issue with the credibility of Howell's declaration that must be resolved at trial.  That Merryman articulated different reasons for not hiring Howell and for hiring Martin does not give rise to a credibility issue as the proffered explanations are neither mutually exclusive nor contradictory.  Therefore, the Court **OVERRULES** this objection.  Howell goes on to argue that Merryman recommended Howell as an FSR to a branch manager a week later.  However, to support this assertion, Howell cites to a portion of the Merryman Deposition that does not appear in the record.  The Court cannot credit this unsupported assertion, and the Court **OVERRULES** any objection based on it.

D.E. # 50-4). Dear forwarded three of these applications to the respective hiring managers. (*Id.* at 2-3, 9-11). Dear has no recollection of why she did not forward the remaining twenty-two applications other than "there's a lot of people applying that have strong skill sets[.]" (Dear Dep. 65:9-14). The applicants hired for these twenty-five positions were all younger than Howell. (FTB Production at 1).

Howell filed a charge of age discrimination with the Equal Employment Opportunity Commission on September 22, 2010. (Am. Compl. ¶ 18, D.E. # 27). Howell then sued FTB in this Court on December 22, 2010, alleging violations of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* (Compl. ¶ 13).

FTB filed the instant Motion for Summary Judgment on March 18, 2013, arguing FTB has articulated a legitimate, nondiscriminatory reason for not hiring Howell for the floater position, and that Howell cannot establish this reason was pretextual. Howell filed a Response in Opposition on May 9, 2013, stating FTB had not articulated a legitimate, nondiscriminatory reason for not hiring Howell for the twenty-five positions at issue in this litigation, and that even had FTB done so, there is at least a question of fact as to whether that reason is pretextual.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if she "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.[4] As a result, the

---

[3] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"judge may not make credibility determinations or weigh the evidence."[5] When the moving party supports the motion with documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings, but must present some "specific facts showing that there is a genuine issue for trial."[6] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8] When determining if summary judgment is appropriate, a court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[9] A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[10] In the Sixth Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[11]

---

[5] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[9] *Id.* at 251-52.

[10] *Celotex*, 477 U.S. at 322.

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 857 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

**ANALYSIS**

A district court sitting in diversity will apply the substantive law, including choice of law rules, of the state in which it sits.[12] The parties agree Tennessee law provides the substantive law governing this action. Under Tennessee law, "[i]t is a discriminatory practice for an employer to . . . [f]ail or refuse to hire or discharge any person . . . because of such individual's . . . age[.]"[13] Tennessee courts use the same analytical framework for age discrimination under the Tennessee Human Rights Act as that used for claims made under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*[14] A plaintiff under the THRA may, therefore, prove a violation by way of either direct or circumstantial evidence.[15] The parties agree there is no direct evidence that FTB refused to hire Howell because of his age. In order to analyze whether Howell makes out a circumstantial case for age discrimination under THRA, the Court turns to a version of the oft-used and familiar *McDonnell Douglas/Burdine*[16] standard.[17] Under this framework, Howell must first make out a prima facie case of employment discrimination.[18] If Howell makes out this prima facie case, the burden of production shifts to FTB to articulate a legitimate,

---

[12] 28 U.S.C. § 1652; *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990)).

[13] Tenn. Code Ann. § 4-21-401(a)(1).

[14] *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 609-10 (Tenn. Ct. App. 2007).

[15] *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).

[16] Referring to *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[17] *Frye*, 227 S.W.3d at 610.

[18] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (citing *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993)).

7

nondiscriminatory reason for its decision not to hire Howell.[19] If FTB meets this burden, the burden of production shifts back to Howell to show FTB's proffered reason is pretextual.[20]

FTB concedes Howell makes out a prima facie case, satisfying the first step of *McDonnell Douglas/Burdine* analysis.[21] Therefore, for FTB to be entitled to summary judgment, it must produce evidence that shows it had a legitimate, nondiscriminatory reason for refusing to hire Howell.

The Court finds FTB has not articulated such a legitimate, nondiscriminatory reason. FTB devotes a great deal of briefing to Merryman's decision to not hire Howell for the floating FSR position.[22] However, Howell states the floating FSR position is not at issue in the present litigation, as FTB filled that position with an internal applicant.[23] However, Merryman was only involved in the hiring decision for three of the twenty-five positions, and FTB does not introduce evidence that a supposed unwillingness by Howell to remain in those positions was the reason Merryman did not hire Howell for *those* positions. Therefore, what Merryman may or may not have believed regarding Howell's willingness to remain in the FSR position for any period of time does not establish a legitimate, nondiscriminatory reason in rebuttal of Howell's prima facie case.

---

[19] *Id.*

[20] *Id.*

[21] *See* Def.'s Mem. in Sup't Mot. Summ. J. at 5, D.E. # 42-1 ("First Tennessee will accept for this motion Plaintiff's prima facie case").

[22] *Id.* at 6-9.

[23] Pl.'s Resp. to Mot. for Summ. J. at 4, D.E. # 47 ("That position is therefore not even in contention in this lawsuit.")

FTB also, under the rubric of producing evidence of a legitimate, nondiscriminatory reason for not hiring Howell, makes various arguments regarding Howell's provision of his graduation date. The gist of FTB's arguments is that it would be far-fetched to draw an inference of discrimination when Dear forwarded Howell's application to Merryman and Merryman scheduled an interview with Howell when both knew Howell's graduation date. However, these arguments do little to help FTB's case in this context. FTB concedes Howell makes out a prima facie case, so an inference of discrimination already exists.[24] While this argument might go to whether Howell establishes FTB's asserted legitimate reason for not hiring Howell is pretext, at this point there is no burden on Howell to show pretext: FTB has yet to establish a legitimate, nondiscriminatory reason to rebut Howell's prima facie case with respect to the twenty-five applications at issue. Since FTB fails to rebut Howell's prima facie case, the Court finds it unnecessary to determine whether any asserted nondiscriminatory reason is pretextual.

## CONCLUSION

Because FTB concedes Howell makes out a prima facie case of employment discrimination and fails to assert a legitimate, nondiscriminatory reason for not hiring Howell for any of the twenty-five positions at issue, the Court **DENIES** FTB's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                        **s/ S. Thomas Anderson**
                                                        S. THOMAS ANDERSON

---

[24] In support of its position, FTB cites to *Cho v. City of New York*, No. 11 Civ. 1658(PAC)(MHD), 2012 WL 4364492 (S.D.N.Y. Sept. 12, 2012). In *Cho*, the Southern District of New York considered a case where the defendant vigorously contested whether the plaintiff made out a prima facie case under *McDonnell Douglas/Burdine* analysis. *Id* at *5-6. To say the least, the issue in Cho is different than that presented in the case *sub judice*.

UNITED STATES DISTRICT JUDGE

Date: May 31, 2013.